**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

PATRICK LEXIS,                          :
     *Plaintiff*,                    :
                                     :
v.                                      :        No. 3:24-cv-00118 (JAM)
                                     :
L.T. PETERSON,                          :
     *Defendant*.                    :

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

The plaintiff, Patrick Lexis, is a sentenced prisoner in the custody of the Connecticut

Department of Correction ("DOC"). He was a pretrial detainee at the time of the events that gave

rise to this action.[1] Lexis brings this complaint *pro se* and *in forma pauperis* against Correctional

Officer Lieutenant Peterson ("Lt. Peterson") under 42 U.S.C. § 1983, alleging that Lt. Peterson

violated his constitutional rights through excessive force and indifference to his health and

safety.

After an initial review pursuant to 28 U.S.C. § 1915A, I conclude that Lexis's claims for

excessive force and deliberate indifference to health and safety may proceed against Lt. Peterson.

In addition, construing his *pro se* complaint liberally, I also determine that Lexis may pursue a

claim against Lt. Peterson for deliberate indifference to medical needs.

## BACKGROUND

I take the facts as stated in Lexis's complaint as true for the purposes of this ruling. On

January 3, 2023, Lexis was a pretrial detainee at New Haven Correctional Center ("NHCC").[2]

---

[1] Doc. #1 at 8 (¶ 2). I take judicial notice of records on the Connecticut DOC website indicating that Lexis was sentenced on February 16, 2024 and is now in custody at the Osborn Correctional Institution. http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=370866 (last visited May 8, 2024).

[2] Doc. #1 at 8 (¶¶ 2, 3).

When Lexis and his cellmate, Eric Williams, entered the dining room for breakfast that day, Correctional Officer Russell asked Williams to remove his do-rag or to take his food back to his cell.[3] Williams decided to return to his cell, but Russell refused to open it for him, and dishonestly issued Williams a flagrant disobedience ticket.[4] Lexis returned to that same cell around this time.[5]

Shortly after, Lt. Peterson, who bore animus towards Williams from past arguments, visited the cell and told Williams to "cuff-up."[6] Williams grew irate and denied any wrongdoing.[7] Lt. Peterson told Williams he did not care.[8] Williams then proceeded to block the cell window with white paper.[9]

Lt. Peterson offered Williams "a couple of warnings," then deployed an orange chemical agent for 3-5 seconds against Williams and Lexis (who had remained in the cell).[10] The chemical agent caused "instant irritation & burning to [their] eyes & nose as well as trouble breathing."[11] After Williams refused another of Lt. Peterson's commands to take down the paper and "cuff-up," Lt. Peterson again sprayed Lexis and Williams for 3-5 seconds, causing more "irritation & burning of [their] eyes & nose as well as trouble breathing."[12]

When Lexis complained to Lt. Peterson that he was having trouble breathing and had nothing to do with the dispute between Lt. Peterson and Williams, Lt. Peterson asked Lexis to

---

[3] *Id.* at 8 (¶ 5).
[4] *Id.* at 8 (¶¶ 6-7, 9).
[5] *Id.* at 8 (¶ 8).
[6] *Id.* at 9 (¶ 10).
[7] *Id.* at 9 (¶ 11).
[8] *Id.* at 9 (¶ 12).
[9] *Ibid.*
[10] *Id.* at 9 (¶ 13).
[11] *Ibid.*
[12] *Id.* at 9 (¶¶ 14, 15).

tell his cellmate, Williams, to "cuff-up."[13]  Lexis repeatedly told Lt. Peterson that he "couldn't breathe" but Lt. "Peterson disregarded [Lexis's] health & safety by not bringing [him] to medical."[14]

Instead, Lt. Peterson deployed another round of chemical agent for 3-5 seconds, causing Lexis "to lay on the floor coughing profusely."[15]  At this point, other inmates witnessing the scene began yelling at Lt. Peterson to take Lexis for medical attention.[16]  However, Lt. Peterson did nothing.[17]  After two to three hours, Williams "cuffed-up," and Lexis was sent to a medical unit to address irritation, burning in his eyes, and trouble breathing.[18]  When he returned to his cell, the residue of the chemical agent continued to irritate him every time he touched the walls.[19]  Lexis did not receive a disobedience ticket for these events.[20]

Lexis alleges constitutional claims for deliberate indifference, failure to protect, and excessive force, as well as several state law causes of action.[21]  He claims to have exhausted all his administrative remedies and seeks compensatory and punitive damages against Lt. Peterson, as well as court costs and attorney fees.[22]

---

[13] *Id.* at 10 (¶¶ 18-19).
[14] *Id.* at 10 (¶ 20).
[15] *Id.* at 10 (¶ 21).
[16] *Id.* at 10 (¶ 23).
[17] *Ibid.*
[18] *Id.* at 10-11 (¶ 24).
[19] *Id.* at 11 (¶ 26).
[20] *Id.* at 11 (¶ 25).
[21] *Id.* at 12. Though Lexis brings several state law claims, the court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an initial review order is to make a speedy initial-screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.
[22] Doc. #1 at 12-13.

**DISCUSSION**

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a government entity or government actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." A complaint may not survive an initial review under § 1915A unless it alleges facts that, taken as true, give rise to plausible grounds for relief. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Still, even a *pro se* complaint may not survive dismissal if its factual allegations do not establish plausible grounds for relief. *Ibid.*

Lexis seeks relief under the Fifth, Eighth, and Fourteenth Amendments.[23] But, given the nature of his allegations, only the Fourteenth Amendment is potentially applicable. The Due Process Clause of the Fifth Amendment constrains only the federal government, *Dusenbery v. United States*, 534 U.S. 161, 167 (2002), and the Eighth Amendment applies only to punishment following conviction. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

Nevertheless, Lexis's federal claims—for deliberate indifference to health and safety and for excessive force—are both cognizable under the Fourteenth Amendment. *See Frost v. New York City Police Dep't*, 980 F.3d 231, 251 (2d Cir. 2020) (excessive force); *Darnell*, 849 F.3d at

---

[23] *Id.* at 5.

4

29-34 & n.9 (deliberate indifference). I consider each in turn. Construing Lexis's complaint liberally, I also examine whether he states a claim for deliberate indifference to medical needs.

### *Deliberate indifference (health and safety)*

Lexis alleges separate counts for deliberate indifference to health and safety and for failure to protect, but they form the same cause of action. *See Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (Eighth Amendment context). An inmate seeking to bring such a claim must allege facts which satisfy "(1) an 'objective prong' showing that the plaintiff's condition of confinement posed an unreasonable risk of serious harm to the plaintiff, and (2) a '*mens rea* prong' showing that the state actor's conduct amounts to deliberate indifference to that objectively serious risk of harm." *Simms v. Durant*, 2021 WL 293567, at *2 (D. Conn. 2021) (citing *Darnell*, 849 F.3d at 29). The mental state requirement of the second prong "roughly means recklessness." *Darnell*, 849 F.3d at 29.

In light of this standard, Lexis's claim for deliberate indifference to health and safety may proceed. Exposure to a chemical agent that causes burning and difficulty breathing creates a risk of serious harm. *See, e.g.*, *Ruffino v. Franco*, 2017 WL 132835, at *1-2 (D. Conn. 2017) (permitting deliberate indifference claim against officer who intentionally sprayed plaintiff with a chemical agent). In addition, Lt. Peterson was allegedly aware of the risk of his actions—he knew that Lexis was present in the cell, and Lexis told him that he was suffering from the repeated use of the chemical agent. The record does not presently reflect any reason why Lt. Peterson needed to use a chemical agent. An inference of recklessness follows from these facts. Accordingly, Lexis has stated a claim for deliberate indifference to health and safety.

*Excessive force*

The use of excessive force against a pre-trial detainee like Lexis violates the Fourteenth Amendment's Due Process Clause. *See Frost*, 980 F.3d at 251. The use of force is excessive if "taken with an expressed intent to punish," if the force is "not rationally related to a legitimate nonpunitive governmental purpose," or if the force "appear[s] excessive in relation to that [legitimate nonpunitive] purpose." *Id*. at 252. In determining whether force is excessive, a court must consider whether the force was "objectively unreasonable," as determined from the perspective of a reasonable officer on the scene. *Kingsley v. Hendrickson,* 576 U.S. 389, 397 (2015). Considerations that may help answer the question include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Ibid.*

Courts in this circuit have sometimes refused to allow inmates to proceed with excessive force claims when they have been incidentally exposed to a chemical agent. In *Cruz-Droz v. Marquis*, 2018 WL 1368907 (D. Conn. 2018), the court rejected an excessive force claim when the inmate was inadvertently sprayed with a chemical agent as part of a correctional officer's efforts to subdue his cellmate. *Id.* at *3. Likewise, in *White v. City of New York*, 2017 WL 3575700 (S.D.N.Y. 2017), the court encountered a plaintiff who had been unintentionally exposed to a chemical agent deployed to break up a fight between other inmates. *Id.* at *1. The court concluded that the plaintiff could not proceed with an excessive force claim. *Id.* at *5.

6

Nevertheless, I am mindful that excessive force claims "turn[] on the facts and circumstances of each particular case." *Frost*, 980 F.3d at 252. And here, I cannot say that Lt. Peterson's alleged actions were necessarily reasonable in light of the factors set out in *Kingsley*. To start, it is not clear that the uncooperative inmate (Williams) posed a significant security threat. Williams was disobeying Lt. Peterson's order to submit to handcuffing, but the facts of the complaint offer little other reason to believe he was likely to cause harm or that it was necessary to require him to submit to handcuffing. He was secured in his cell at the time of the incident, and no altercation was ongoing. By contrast, in *Cruz-Droz*, the defendant deployed the chemical agent to subdue an inmate who was prone to violent tendencies and actively undergoing a psychotic episode. *See Cruz-Droz*, 2018 WL 1368907, at *1. Similarly, in *White*, officers deployed the chemical agent to stop a fight. *See White*, 2017 WL 3575700, at *1.

In this context, the amount of force Lt. Peterson deployed plausibly appears disproportionate to the needs of the situation. *Cruz-Droz* and *White* involved a single use of the chemical agent. *Cruz-Droz*, 2018 WL 1368907, at *1; *White*, 2017 WL 3575700, at *1. Here, Lt. Peterson sprayed repeatedly into Lexis's cell, despite a lack of evidence that using the chemical agent was serving any useful purpose. The spray did not end the standoff. Instead, the situation resolved several hours later when Williams voluntarily submitted to handcuffing.

Indeed, the chemical agent was worse than ineffective. It actively caused Lexis—a compliant inmate—severe distress, which Lexis conveyed to Lt. Peterson. Yet Lt. Peterson continued to use the chemical agent.

In light of the specific facts of this case, I conclude that Lexis has plausibly alleged a claim for the use of excessive force. The situation, as described by Lexis, was not serious enough

to justify Lt. Peterson's decision to expose a bystander to repeated sprays of a chemical agent, particularly when that agent caused noticeable harm to that innocent party. Lexis's excessive force claim may proceed.

### Deliberate indifference (medical needs)

Though Lexis does not raise this cause of action explicitly, the facts of his complaint also suggest a claim for deliberate indifference to medical needs. The elements of a deliberate indifference to medical needs claim parallel those for deliberate indifference to health and safety. An inmate must demonstrate an objectively serious medical need and a culpable mental state. *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019). The first prong requires "a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Ibid.* The second prong demands "culpable recklessness, *i.e.*, an act or a failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021).

Here, Lt. Peterson is alleged to have ignored Lexis's pleas for medical attention when he had pain and difficulty breathing as a result of the chemical agent. Instead, he made Lexis wait several hours while his standoff with Williams resolved. These facts are sufficient to state a claim for deliberate indifference to medical needs. The pain resulting from being sprayed with a chemical agent may be serious enough to fulfill the first prong of the deliberate indifference inquiry. *See Cruz-Droz*, 2018 WL 1368907, at *4; *see also Al-Bukhari v. Semple*, 2017 WL 2125746, at *4 (D. Conn. 2017). Likewise, Lt. Peterson's alleged actions here evince deliberate disregard for Lexis's need. Lexis communicated his difficulties breathing to Lt. Peterson, and other inmates who observed the incident told Lt. Peterson that Lexis required medical attention.

Accordingly, Lexis has alleged plausible grounds for relief for deliberate indifference to his serious medical needs.

CONCLUSION

For the reasons set forth above, the Court enters the following orders:

(1) Lexis may proceed with his Fourteenth Amendment claims against Lt. Peterson for deliberate indifference to health and safety, excessive force, and deliberate indifference to serious medical needs. These claims may proceed against Lt. Peterson in his individual capacity for money damages. The Court otherwise DISMISSES Lexis's remaining claims against Peterson.

(2) The Clerk shall verify the current work address for Lt. Peterson with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to Lt. Peterson at the confirmed address within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request by no later than the **thirty-fifth (35) day** after mailing. If Lt. Peterson fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on that defendant, and Lt. Peterson shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) Lt. Peterson shall file a response to the complaint, either an answer or motion to dismiss, **within sixty (60) days** from the date that the notice of lawsuit and waiver of service of summons forms are mailed to him.

(4) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(5) The discovery deadline is extended to **six months (180 days)** from the date of this

9

Order. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the Clerk must send to plaintiff with a copy of this order. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

(6) The deadline for summary judgment motions is extended to **seven months (210 days)** from the date of this Order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e., a motion to dismiss or a motion for summary judgment) **within twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

(8) If Lexis changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Lexis must give notice of a new address even if he is incarcerated. He should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Lexis has more than one pending case, he must indicate all of the case numbers in the notification of change of address. Lexis must also notify the defendant or defense counsel of his new address.

(9) Lexis shall utilize the Prisoner E-Filing Program when filing documents with the Court. Lexis is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each

other by regular mail.

It is so ordered.

Dated at New Haven this 8th day of May 2024.

s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge